LII > Electronic Code of Federal Regulations (e-CFR) > Title 12—Banks and Banking
> CHAPTER X—CONSUMER FINANCIAL PROTECTION BUREAU
> PART 1026—TRUTH IN LENDING (REGULATION Z) > Subpart A—General
> § 1026.4 Finance charge.

*See 3b.7*

# 12 CFR § 1026.4 - Finance charge.

CFR    State Regulations

## § 1026.4 Finance charge.

**(a)** *Definition.* The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction.

**(1)** *Charges by third parties.* The finance charge includes fees and amounts charged by someone other than the creditor, unless otherwise excluded under this section, if the creditor:

**(i)** Requires the use of a third party as a condition of or an incident to the extension of credit, even if the consumer can choose the third party; or

**(ii)** Retains a portion of the third-party charge, to the extent of the portion retained.

**(2)** *Special rule; closing agent charges.* Fees charged by a third party that conducts the loan closing (such as a settlement agent, attorney, or escrow or title company) are finance charges only if the creditor:

(i) Requires the particular services for which the consumer is charged;

(ii) Requires the imposition of the charge; or

(iii) Retains a portion of the third-party charge, to the extent of the portion retained.

**(3) *Special rule; mortgage broker fees.*** Fees charged by a mortgage broker (including fees paid by the consumer directly to the broker or to the creditor for delivery to the broker) are finance charges even if the creditor does not require the consumer to use a mortgage broker and even if the creditor does not retain any portion of the charge.

**(b) *Examples of finance charges.*** The finance charge includes the following types of charges, except for charges specifically excluded by paragraphs (c) through (e) of this section:

**(1)** Interest, time price differential, and any amount payable under an add-on or discount system of additional charges.

**(2)** Service, transaction, activity, and carrying charges, including any charge imposed on a checking or other transaction account (except a prepaid account as defined in § 1026.61) to the extent that the charge exceeds the charge for a similar account without a credit feature.

**(3)** Points, loan fees, assumption fees, finder's fees, and similar charges.

**(4)** Appraisal, investigation, and credit report fees.

**(5)** Premiums or other charges for any guarantee or insurance protecting the creditor against the consumer's default or other credit loss.

**(6)** Charges imposed on a creditor by another person for purchasing or accepting a consumer's obligation, if the consumer is required to pay the charges in cash, as an addition to the obligation, or as a deduction from the proceeds of the obligation.

**(7)** Premiums or other charges for credit life, accident, health, or loss-of-income insurance, written in connection with a credit transaction.

**(8)** Premiums or other charges for insurance against loss of or damage to property, or against liability arising out of the ownership or use of property, written in connection with a credit transaction.

**(9)** Discounts for the purpose of inducing payment by a means other than the use of credit.

**(10)** Charges or premiums paid for debt cancellation or debt suspension coverage written in connection with a credit transaction, whether or not the coverage is insurance under applicable law.

TABLE OF CONTENTS

# § 1026.23 Right of rescission.

THIS VERSION IS THE CURRENT REGULATION

📖 View all versions of this regulation (cfpb.gov/rules-policy/regulations/1026/versions/23/)

🔍 Search this regulation (cfpb.gov/rules-policy/regulations/search-regulations/results/?regs=1026)



**(a) Consumer's right to rescind.**

> Official interpretation of 23(a) Consumer's Right to Rescind

**(1)** In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section. For purposes of this section, the addition to an existing obligation of a security interest in a consumer's principal dwelling is a transaction. The right of rescission applies only to the addition of the security interest and not the existing obligation. The creditor shall deliver the notice required by paragraph (b) of this section but need not deliver new material disclosures. Delivery of the required notice shall begin the rescission period.

> Official interpretation of Paragraph 23(a)(1)

**(2)** To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

> Official interpretation of Paragraph 23(a)(2)
>
> **1. Consumer's exercise of right.** The consumer must exercise the right of rescission in writing but not necessarily on the notice supplied under § 1026.23(b). Whatever the means of sending the notification of rescission - mail, telegram or other written means - the time period for the creditor's performance under § 1026.23(d)(2) does not begin to run until the notification has been received. The creditor may designate an agent to receive the notification so long as the agent's name and address appear on the notice provided to the consumer under § 1026.23(b). Where the creditor fails to provide the consumer with a designated address for sending the notification of rescission, delivering notification to the person or address to which the consumer has been directed to send, payments constitutes delivery to the creditor or assignee. State law determines whether delivery of the notification to a third party other than the person to whom payments are made is delivery to the creditor or assignee, in the case where the creditor fails to designate an address for sending the notification of rescission.
>
> See interpretation of Paragraph 23(a)(2) in Supplement I (cfpb.gov/rules-policy/regulations/1026/interp-23/#23-a-2-Interp)

*[Handwritten note: Letter was sent 11/8/2022 we still recieving threatning letters.]*

**(3)**

cfpb Consumer Financial Protection Bureau (cfpb.gov/)



TABLE OF CONTENTS

# § 1026.23 Right of rescission.

THIS VERSION IS THE CURRENT REGULATION

📅 View all versions of this regulation (cfpb.gov/rules-policy/regulations/1026/versions/23/)

🔍 Search this regulation (cfpb.gov/rules-policy/regulations/search-regulations/results/?regs=1026)

**(a) Consumer's right to rescind.**

Official interpretation of 23(a) Consumer's Right to Rescind

**(1)** In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section. For purposes of this section, the addition to an existing obligation of a security interest in a consumer's principal dwelling is a transaction. The right of rescission applies only to the addition of the security interest and not the existing obligation. The creditor shall deliver the notice required by paragraph (b) of this section but need not deliver new material disclosures. Delivery of the required notice shall begin the rescission period.

Official interpretation of Paragraph 23(a)(1)

**(2)** To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

Official interpretation of Paragraph 23(a)(2)

1. **Consumer's exercise of right.** The consumer must exercise the right of rescission in writing but not necessarily on the notice supplied under § 1026.23(b). Whatever the means of sending the notification of rescission - mail, telegram or other written means - the time period for the creditor's performance under § 1026.23(d)(2) does not begin to run until the notification has been received. The creditor may designate an agent to receive the notification so long as the agent's name and address appear on the notice provided to the consumer under § 1026.23(b). Where the creditor fails to provide the consumer with a designated address for sending the notification of rescission, delivering notification to the person or address to which the consumer has been directed to send, payments constitutes delivery to the creditor or assignee. State law determines whether delivery of the notification to a third party other than the person to whom payments are made is delivery to the creditor or assignee, in the case where the creditor fails to designate an address for sending the notification of rescission.

See interpretation of Paragraph 23(a)(2) in Supplement I (cfpb.gov/rules-policy/regulations/1026/interp-23/#23-a-2-Interp)

*[Handwritten annotation: "Letter was sent 11/8/2022 we still recieving threatning letters."]*

**(3)**

i. The period within which the consumer may exercise the right to rescind runs for 3 business days from the last of 3 events:

    A. Consummation of the transaction.

    B. Delivery of all material disclosures.

    C. Delivery to the consumer of the required rescission notice.

ii. For example:

    A. If a transaction is consummated on Friday, June 1, and the disclosures and notice of the right to rescind were given on Thursday, May 31, the rescission period will expire at midnight of the third business day after June 1 - that is, Tuesday, June 5.

    B. If the disclosures are given and the transaction consummated on Friday, June 1, and the rescission notice is given on Monday, June 4, the rescission period expires at midnight of the third business day after June 4 - that is, Thursday, June 7. The consumer must place the rescission notice in the mail, file it for telegraphic transmission, or deliver it to the creditor's place of business within that period in order to exercise the right.

2. **Material disclosures.** Section 1026.23(a)(3)(ii) sets forth the material disclosures that must be provided before the rescission period can begin to run. Failure to provide information regarding the annual percentage rate also includes failure to inform the consumer of the existence of a variable rate feature. Failure to give the other required disclosures does not prevent the running of the rescission period, although that failure may result in civil liability or administrative sanctions.

3. **Unexpired right of rescission.**

i. When the creditor has failed to take the action necessary to start the three-business day rescission period running, the right to rescind automatically lapses on the occurrence of the earliest of the following three events:

    A. The expiration of three years after consummation of the transaction.

    B. Transfer of all the consumer's interest in the property.

    C. Sale of the consumer's interest in the property, including a transaction in which the consumer sells the dwelling and takes back a purchase money note and mortgage or retains legal title through a device such as an installment sale contract.

ii. Transfer of all the consumers' interest includes such transfers as bequests and gifts. A sale or transfer of the property need not be voluntary to terminate the right to rescind. For example, a foreclosure sale would terminate an unexpired right to rescind. As provided in Section 125 of the Act, the three-year limit may be extended by an administrative proceeding to enforce the provisions of this section. A partial transfer of the consumer's interest, such as a transfer bestowing co-ownership on a spouse, does not terminate the right of rescission.

See interpretation of Paragraph 23(a)(3) in Supplement I (cfpb.gov/rules-policy/regulations/1026/interp-23/#23-a-3-Interp)

**(i)** The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act.

**(ii)** For purposes of this paragraph (a)(3), the term "material disclosures" means the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total of payments, the payment schedule, and the disclosures and

**(4)** When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

---

Official interpretation of Paragraph 23(a)(4)

1. **Joint owners.** When more than one consumer has the right to rescind a transaction, any of them may exercise that right and cancel the transaction on behalf of all. For example, if both husband and wife have the right to rescind a transaction, either spouse acting alone may exercise the right and both are bound by the rescission.

See interpretation of Paragraph 23(a)(4) in Supplement I (cfpb.gov/rules-policy/regulations/1026/interp-23/#23-a-4-Interp)

---

**(b)**

---

Official interpretation of Paragraph 23(b)

**(1) Notice of right to rescind.** In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered in electronic form in accordance with the consumer consent and other applicable provisions of the E-Sign Act). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

---

Official interpretation of 23(b)(1) Notice of Right To Rescind

---

> *[Handwritten margin note:]* Never recieve Seperate Document. 3 Day Later or Two copies was signed Same Day we Signed refi-Documents

**(i)** The retention or acquisition of a security interest in the consumer's principal dwelling.

**(ii)** The consumer's right to rescind the transaction.

**(iii)** How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

**(iv)** The effects of rescission, as described in paragraph (d) of this section.

**(v)** The date the rescission period expires.

**(2) Proper form of notice.** To satisfy the disclosure requirements of paragraph (b)(1) of this section, the creditor shall provide the appropriate model form in appendix H of this part or a substantially similar notice.

**(c) Delay of creditor's performance.** Unless a consumer waives the right of rescission under paragraph (e) of this section, no money shall be disbursed other than in escrow, no services shall be performed and no materials delivered until the rescission period has expired and the creditor is reasonably satisfied that the consumer has not rescinded.

---

Official interpretation of 23(c) Delay of Creditor's Performance

---

**(d) Effects of rescission.**

---

Official interpretation of 23(d) Effects of Rescission

---

**(1)** When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

**(2)** Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.



1 year Later.

Official interpretation of Paragraph 23(d)(2)

**(3)** If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.

Official interpretation of Paragraph 23(d)(3)

**(4)** The procedures outlined in paragraphs (d)(2) and (3) of this section may be modified by court order.

Official interpretation of Paragraph 23(d)(4)

**(e) Consumer's waiver of right to rescind.** The consumer may modify or waive the right to rescind if the consumer determines that the extension of credit is needed to meet a bona fide personal financial emergency. To modify or waive the right, the consumer shall give the creditor a dated written statement that describes the emergency, specifically modifies or waives the right to rescind, and bears the signature of all the consumers entitled to rescind. Printed forms for this purpose are prohibited.

Official interpretation of 23(e) Consumer's Waiver of Right to Rescind

**(f) Exempt transactions.** The right to rescind does not apply to the following:

Official interpretation of 23(f) Exempt Transactions

**(1)** A residential mortgage transaction.

**(2)** A refinancing or consolidation by the same creditor of an extension of credit already secured by the consumer's principal dwelling. The right of rescission shall apply, however, to the extent the new amount financed exceeds the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amounts attributed solely to the costs of the refinancing or consolidation.

**(3)** A transaction in which a state agency is a creditor.

**(4)** An advance, other than an initial advance, in a series of advances or in a series of single-payment obligations that is treated as a single transaction under § 1026.17(c)(6), if the notice required by paragraph (b) of this section and all material disclosures have been given to the consumer.

**(5)** A renewal of optional insurance premiums that is not considered a refinancing under § 1026.20(a)(5).

**(g) Tolerances for accuracy** –

**(1) One-half of 1 percent tolerance.** Except as provided in paragraphs (g)(2) and (h)(2) of this section:

**(i)** The finance charge and other disclosures affected by the finance charge (such as the amount financed and the annual percentage rate) shall be considered accurate for purposes of this section if the disclosed finance charge:

**(A)** Is understated by no more than 1/2 of 1 percent of the face amount of the note or $100, whichever is greater; or

**(B)** Is greater than the amount required to be disclosed.

**(ii)** The total of payments for each transaction subject to § 1026.19(e) and (f) shall be considered accurate for purposes of this section if the disclosed total of payments:

**(A)** Is understated by no more than 1/2 of 1 percent of the face amount of the note or $100, whichever is greater; or

**(B)** Is greater than the amount required to be disclosed.

**(2) One percent tolerance.** In a refinancing of a residential mortgage transaction with a new creditor (other than a transaction covered by § 1026.32), if there is no new advance and no consolidation of existing loans:

Official interpretation of 23(g)(2) One Percent Tolerance

**(i)** The finance charge and other disclosures affected by the finance charge (such as the amount financed and the annual percentage rate) shall be considered accurate for purposes of this section if the disclosed finance charge:

**(A)** Is understated by no more than 1 percent of the face amount of the note or $100, whichever is greater; or

**(B)** Is greater than the amount required to be disclosed.

**(ii)** The total of payments for each transaction subject to § 1026.19(e) and (f) shall be considered accurate for purposes of this section if the disclosed total of payments:

**(A)** Is understated by no more than 1 percent of the face amount of the note or $100, whichever is greater; or

**(B)** Is greater than the amount required to be disclosed.

**(h) Special rules for foreclosures —**

Official interpretation of 23(h) Special Rules for Foreclosures

**(1) Right to rescind.** After the initiation of foreclosure on the consumer's principal dwelling that secures the credit obligation, the consumer shall have the right to rescind the transaction if:

**(i)** A mortgage broker fee that should have been included in the finance charge was not included; or

Official interpretation of Paragraph 23(h)(1)(i)

1. **Mortgage broker fees.** A consumer may rescind a loan in foreclosure if a mortgage broker fee that should have been included in the finance charge was omitted, without regard to the dollar amount involved. If the amount of the mortgage broker fee is included but misstated the rule in § 1026.23(h)(2) applies.

See interpretation of Paragraph 23(h)(1)(i) in Supplement I (cfpb.gov/rules-policy/regul ations/1026/interp-23/#23-h-1-i-Interp)

(ii) The creditor did not provide the properly completed appropriate model form in appendix H of this part, or a substantially similar notice of rescission.

**(2) Tolerance for disclosures.** After the initiation of foreclosure on the consumer's principal dwelling that secures the credit obligation:

---

Official interpretation of 23(h)(2) Tolerance for Disclosures

1. **General.** The tolerance for disclosure of the finance charge is based on the accuracy of the total finance charge rather than its component charges. For transactions subject to § 1026.19(e) and (f), the tolerance for disclosure of the total of payments is based on the accuracy of the total of payments, taken as a whole, rather than its component charges.

2. **Example.** See comment 38(o)-1 for examples illustrating the interaction of the finance charge and total of payments accuracy requirements for each transaction subject to § 1026.19(e) and (f).

See interpretation of 23(h)(2) Tolerance for Disclosures in Supplement I (cfpb.gov/rules-policy/regulations/1026/interp-23/#23-h-2-Interp)

---

(i) The finance charge and other disclosures affected by the finance charge (such as the amount financed and the annual percentage rate) shall be considered accurate for purposes of this section if the disclosed finance charge:

(A) Is understated by no more than $35; or

(B) Is greater than the amount required to be disclosed.

(ii) The total of payments for each transaction subject to § 1026.19(e) and (f) shall be considered accurate for purposes of this section if the disclosed total of payments:

(A) Is understated by no more than $35; or

(B) Is greater than the amount required to be disclosed.

---

⟨ Previous section - § 1026.22 (cfpb.gov/rules-policy/regulations/1026/22/)
**§ 1026.22 Determination of annual percentage rate.**

Next section - § 1026.24 (cfpb.gov/rules-policy/regulations/1026/24/) ⟩
**§ 1026.24 Advertising.**

This is a Tender of Payment That was Rejected. See UCC-3-603 Tender of Payment you can see the wording "Pay To Bearer". According To The Law if This negotiable instrument isn't accepted It Should be returned To Sender if its not returned It is The presumtion That it was recieved & Cashed & The Tender of payment amount is To Be Discharged. But we were met with Threats & Falsehoods About Them not Taking This Form of Payment.

See NEXT PAGE




#### 12.18.2 Contraceptives

Unsolicited samples of an article or thing designed, adapted, or intended for preventing conception is permitted in the mail only when sent to a manufacturer or a dealer of such an article or things, to a licensed physician or surgeon, or to a nurse, pharmacist, druggist, hospital, or clinic (39 USC 3001; 18 USC 1461).

### 12.19 Building Construction Material

Building construction material is not permitted in the mail if the acceptance and processing is likely to harm or injure USPS employees, mail, or equipment. Factors considered include but are not limited to whether the material may pose potential storage problems at the postal facilities that may process the material; whether the volume of material may impede the flow of mail in USPS transportation or mail distribution systems; whether the volume of material may lead to security problems; and whether processing the material may create safety hazards for USPS employees.

### 12.20 Prohibition on Sharp Instruments Intended for Use in an Animal Fighting Venture

The interstate or international mailing of a knife, a gaff, or any other sharp instrument attached, or designed or intended to be attached, to the leg of a bird for use in an animal fighting venture (as defined in section 9.3.1b) is prohibited (7 U.S.C. 2156). Violators can be subject to the criminal penalties in 18 U.S.C. 49. See 9.3.1 for the prohibition on mailing animals intended for use in an animal fighting venture and 13.5.7 for the restrictions on mailing written, printed, or graphic matter related to animal fighting ventures.

### 12.21 Mail Weighing More Than 13 Ounces

A mailpiece weighing more than 13 ounces bearing only postage stamps as postage may not be deposited into a collection box, Postal Service lobby drop, Automated Postal Center (APC) drop, Postal Service dock, customer mailbox, or other unattended location. These mailpieces are also precluded from pickup service. The sender must present such items to an employee at a retail service counter in a Postal Service facility. Improperly presented items will be returned to the sender for proper entry and acceptance.

*[handwritten annotation: Mail Fraud]*

### 13.0 Written, Printed, and Graphic Matter Generally

### 13.1 Solicitations in Guise of Bills, Invoices, or Statements of Account (39 USC 3001(D); 39 USC 3005)

#### 13.1.1 General

Any otherwise mailable matter that reasonably could be considered a bill, invoice, or statement of account due, but is in fact a solicitation for an order, is nonmailable unless it conforms to 13.1.2 through 13.1.5 in *Solicitations in Guise of Bills, Invoices, or Statements of Account (39 USC 3001(D); 39 USC 3005)*. A nonconforming solicitation constitutes prima facie evidence of violation of 39 USC 3005. Compliance with this section does not avoid violation of Section 3005 if any part of the solicitation or any information with it misrepresents a material fact to the

Armour/Elias 700000149888410

# Lakeview
subserviced by LoanCare

P.O. Box 8068 | Virginia Beach, VA 23450 | 1.800.509.0183

0-754-01193-0014172-001-000-011-000-000

REBECCA ELIAS
9228 BROKEN TIMBER WAY
COLUMBIA MD 21045-2310

## MONTHLY STATEMENT

| | |
|---|---|
| Statement Date | 12/18/2023 |
| Total Amount Due | $21,442.22 |
| Payment Due Date* | 01/01/2024 |

* A late fee of $66.97 may be assessed if payment is received after normal business hours on 01/16/2024



Save time and pay online at
https://lakeviewloanservicing.myloancare.com

**Customer Service/Pay-by-Phone:** 1.800.509.0183*
*Calls are randomly monitored and recorded to ensure quality service.
**Hours:** Monday - Friday: 8 a.m. to 9 p.m. ET
Saturday: 8 a.m. to 3 p.m. ET
**Refinance/Purchase Loan Specialist:**
1.833.881.8270
**Hours:** Monday - Friday: 8:30 a.m. to 8 p.m. ET

### Account Information

| | |
|---|---|
| Loan Number | 0058892472 |
| Property Address: | |
| 9228 BROKEN TIMBER WAY | |
| COLUMBIA MD 21045 | |
| Outstanding Principal Balance | $391,577.64 |
| Interest Rate | 2.750% |
| Escrow Balance | ($5,028.40) |
| Maturity Date | 07/01/2051 |
| Prepayment Penalty | No |

### Explanation of Amount Due

| | |
|---|---|
| Principal | $787.75 |
| Interest | $886.62 |
| Escrow (Taxes and Insurance) | $1,011.53 |
| **Regular Monthly Payment** | **$2,685.90** |
| New Fees & Charges (since last statement) | $66.97 |
| Past Due Amount (including unpaid fees/charges) | $18,689.35 |
| Unapplied Balance† | $0.00 |
| **Total Amount Due**** | **$21,442.22** |

### Delinquency Notice

You are late on your mortgage payments. Failure to bring your loan current may result in fees and foreclosure, with the possibility of losing your home. As of December 18, you are 170 days delinquent on your mortgage loan.

Recent Account History
- Payment due 07/01/2023: Unpaid amount of $2,662.24
- Payment due 08/01/2023: Unpaid amount of $2,662.24
- Payment due 09/01/2023: Unpaid amount of $2,662.24
- Payment due 10/01/2023: Unpaid amount of $2,662.24
- Payment due 11/01/2023: Unpaid amount of $2,662.24
- Payment due 12/01/2023: Unpaid amount of $2,662.24
**Total due $21,442.22**
** You must pay this amount to bring your loan current. If you are experiencing financial difficulty: See 'Important Information' for homeowner counseling information.

### Past Payment Breakdown

| | Paid Last Month | Paid Year-to-Date |
|---|---|---|
| Principal | $0.00 | $7,673.01 |
| Interest | $0.00 | $9,070.69 |
| Escrow (Taxes and Insurance) | $0.00 | $9,195.86 |
| Fees & Charges | $0.00 | $3,148.60 |
| Unapplied Amount | $0.00 | $0.00 |
| **Total** | **$0.00** | **$29,088.16** |

### Important Messages

Learn more about the Homeowner Assistance Fund (HAF), a federal program helping homeowners impacted by COVID-19. Find out more information about the availability of HAF by visiting the National Council of State Housing Agencies website at https://www.ncsha.org/homeowner-assistance-fund/.

**This amount does not represent a full payoff or reinstatement figure. Please contact customer service for information on full reinstatement or to request a complete payoff.

†Partial Payment: If your loan has a past due balance, any partial payments that you make are not applied to your mortgage, but instead are held in a suspense account, and reflected in the Suspense/Other column of the Transaction Activity. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.

**Sign up for e-statements!** It's fast, secure and convenient. Just sign in to our website and visit the Document Center.

### Transaction Activity (11/17/2023 to 12/18/2023)

| Date | Description | Total | Principal | Interest | Escrow | Suspense/Other | Charges |
|---|---|---|---|---|---|---|---|
| 12/05/2023 | MIP/PMI Disbursement | $254.05 | | | | | |
| 12/12/2023 | County Tax Disbursement | $3,513.66 | | | | | |
| 12/18/2023 | Late Charge Assessed | | | | | | ($66.97) |

*Additional loan activity can be found at https://lakeviewloanservicing.myloancare.com under the Transaction History tab.*

---

**Please return this portion with your payment.**
Loan Number: 0058892472

| PAYMENT DUE DATE | CURRENT PAYMENT | PAST DUE AMOUNT |
|---|---|---|
| 01/01/2024 | $2,685.90 | $15,973.44 |
| TOTAL FEES AND CHARGES | UNAPPLIED BALANCE | TOTAL AMOUNT DUE |
| $2,782.88 | $0.00 | $21,442.22 |

*A late fee of $66.97 may be assessed if payment is received after normal business hours on 01/16/2024

See reverse side for additional important information.
REBECCA ELIAS
9228 BROKEN TIMBER WAY
COLUMBIA MD 21045-2310

| | |
|---|---|
| Additional Principal | $ |
| Additional Escrow | $ |
| Late Charge | $ |
| Other | $ |

Amount Enclosed: $

Please make checks payable to:

LAKEVIEW LOAN SERVICING, LLC
PO BOX 37628
PHILADELPHIA, PA 19101-0628



9071623005889247224016214422221509198

Internet Reprint


addressee (e.g., misleading the addressee about the identity of the sender of the solicitation or about the nature or extent of the goods or services offered may be a violation of Section 3005).

### 13.1.2 Required Disclaimer

The solicitation must bear on its face either the disclaimer required by 39 USC 3001(d)(2)(A) or the notice: "THIS IS NOT A BILL. THIS IS A SOLICITATION. YOU ARE UNDER NO OBLIGATION TO PAY THE AMOUNT STATED ABOVE UNLESS YOU ACCEPT THIS OFFER." The statutory disclaimer or the alternative notice must be displayed in conspicuous boldface capital letters of a color prominently contrasting with the background against which it appears, including all other print on the face of the solicitation and that are at least as large, bold, and conspicuous as any other print on the face of the solicitation, but not smaller than 30-point type (see Exhibit 13.1.2). The notice or disclaimer required by this section must be displayed conspicuously apart from other print on the page immediately below each portion of the solicitation that reasonably could be construed to specify a monetary amount due and payable by the recipient. It must not be preceded, followed, or surrounded by words, symbols, or other matter that reduces its conspicuousness or that introduces, modifies, qualifies, or explains the required text, such as "Legal Notice Required by Law."

**Exhibit 13.1.2 Solicitation Disclaimer**

| Qty. | Listing Category | Amount | |
|---|---|---|---|
| | | | **ACCOUNTS INCORPORATED** |
| 1 | Retail | $50.00 | **IMPORTANT:** This form must be returned to ensure your correct directory listing. Please correct listing and ZIP Code if necessary. |

☐ Check enclosed  ☐ Bill me later

ACCOUNTS INCORPORATED
PO BOX 1000
ANYTOWN WA 98765-4321

ABC COMPANY
1234 MAIN ST
ANYTOWN WA 98765-4321

Detatch and return this portion with your payment.
Retain this portion as your receipt.

| Qty. | Listing Category | Amount |
|---|---|---|
| 1 | Retail | $50.00 |

Business listings to appear in the 2005 Accounts Incorporated Directory.

Amount: $50 for each listing.

**THIS IS NOT A BILL.  THIS IS A SOLICITATION. YOU ARE UNDER NO OBLIGATION TO PAY THE AMOUNT STATED ABOVE UNLESS YOU ACCEPT THIS OFFER.**

### 13.1.3 Intelligibility

The notice or disclaimer must not, by folding or any other device, be made unintelligible or less prominent than any other information on the face of the solicitation.


### 13.1.4  Separable Pages

If a solicitation consists of more than one page or if any page is designed to be separated into portions (e.g., by tearing along a perforated line), the notice or disclaimer required by 13.1.2 must be displayed in its entirety on the face of each page or portion of a page that might be reasonably considered a bill, invoice, or statement of account due as required by 13.1.2.

### 13.1.5  Definitions

For this standard, *color prominently contrasting* excludes any color, or any intensity of an otherwise included color, that does not permit legible reproduction by ordinary office photocopying equipment used under normal operating conditions, and which is not at least as vivid as any other color on the face of the solicitation; and *color* includes black.

## 13.2  Solicitations Deceptively Implying Federal Connection, Approval, or Endorsement (39 USC 3001(H) and 3001(I); 39USC3005)

### 13.2.1  USPS Endorsement

Any solicitation stating that it is approved by the USPS or the Postmaster General or that it conforms to any postal law or regulation is nonmailable.

### 13.2.2  Nonmailable by Government Misrepresentation

A solicitation that misrepresents a government entity is nonmailable subject to these conditions:

a. Matter that contains a solicitation for products, services, information, or funds that implies any federal government connection, approval, or endorsement through the use of a seal, insignia, reference to the Postmaster General, citation to a federal statute, name of a federal agency, department, or commission, or program, trade, or brand name, or any other term or symbol; or contains any reference to the Postmaster General or a citation to a federal statute that misrepresents either the identity of the mailer or the protection or status afforded such matter by the federal government is nonmailable unless it conforms to 13.2.3. A nonconforming solicitation constitutes prima facie evidence of violation of 39 USC 3005. Compliance with 13.2.3 does not avoid violation of 39 USC 3005 if the solicitation or accompanying information misrepresents material fact such as the nature, value, quantity, quality, or efficacy of the products or services offered for sale, or of the activities of an organization asking for information or monetary contributions.

b. Such solicitations must not contain a false representation that federal government benefits or services will be affected by whether or not the recipient makes a purchase or contribution.

c. Solicitations for payment for services otherwise available to the recipient free of charge from the federal government are nonmailable unless they contain a clear and conspicuous statement giving notice of that fact.

### 13.2.3  Permitted Solicitations

A solicitation described in 13.2.2a may be mailable if it meets at least one of these conditions (see Exhibit 13.2.3b):



**Mailability:** Written, Printed, and Graphic Matter Generally

601.13.2.3

  a. The solicitation is by a nongovernmental entity that actually has the federal government connection, approval, or endorsement implied by the solicitation's terms or symbols.

  b. The solicitation appears in a publication for which the addressee has paid or promised to pay a consideration or which the addressee has otherwise indicated he or she wants to receive, and the solicitation is not on behalf of the publisher of the publication.

**Exhibit 13.2.3b Disclaimers for Solicitations Implying Federal Connection**



  c. The solicitation displays the notice required by 13.2.3c1 on the envelope or outside cover or wrapper in which the solicitation is mailed, and one of the two notices required by 13.2.3c2 on the contents. These notices must be printed in boldface capital letters of a color prominently contrasting with the background against which they appear. "Color prominently contrasting" excludes any color or intensity that ordinary photocopying cannot reproduce legibly. The color, which can include black, must be at least as vivid as any other color on the face of the solicitation and its envelope or outside cover or wrapper. The required wording, type size and style, and placement for the notices are as follows: