# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| REBECCA ELIAS ET AL., | | |
| | * | |
| Plaintiffs, | | |
| | * | |
| v. | | |
| | * | Civil No. 24-489-BAH |
| AMERICAN FINANCIAL RESOURCES ET AL., | | |
| | * | |
| Defendants. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM OPINION</u>

Pro se plaintiffs Rebecca Elias ("Elias") and Stefan Armour ("Armour") (together "Plaintiffs") brought suit against American Financial Resources, LLC ("American Financial"), LoanCare, LLC ("LoanCare"), Lakeview Loan Servicing, LLC ("Lakeview"), and Bayview Asset Management, LLC ("Bayview") (collectively "Defendants") alleging several claims arising out of the pending foreclosure of a property owned by Elias.[1]  ECF 15 (amended complaint).[2]  Pending before the Court are seven motions.  First, there are two pending motions to dismiss, including American Financial's motion, ECF 49, and Bayview, Lakeview, and LoanCare's motion, ECF 51. Plaintiffs have also filed several motions, including a motion for leave to file a surreply, ECF 56; a motion for summary judgment, ECF 57, and a supplement thereto, ECF 63; a motion for entry of default, ECF 58; a motion for expedited discovery, ECF 77; and a motion for Clerk's entry of

---

[1] Plaintiffs erroneously named Defendants as "American Financial Resources," "Loancare," "Lakeview Loan Servicing," and "Bayview Asset Management."  *See* ECF 15, at 2.  The Court will direct the Clerk to correct each Defendants' name on the docket.

[2] The original complaint is docketed at ECF 1.

default, ECF 82. Numerous responses and replies to the pending motions have been filed.[3] Several of the filings include memoranda of law and exhibits.[4] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Defendants' motions to dismiss, ECF 49 and 51, are **GRANTED**, and Plaintiffs' motions at ECFs 56, 57, 58, 77, and 82 are **DENIED**.

## I.    BACKGROUND

Armour filed the original complaint on February 20, 2024, asserting claims as "attorney in fact" for "Rebecca Armour."[5] ECF 1, at 3. The Court screened the original complaint under 28 U.S.C. 1915(e)(2)(B) and noted several deficiencies in that complaint, including that Armour was not permitted to bring claims pro se on Elias' behalf, and that the facts alleged were insufficient to allow the Court to "discern which claims [were] brought against which defendant or how each of the named defendants [were] involved in the allegedly unlawful conduct." ECF 11, at 4. The Court granted Armour the opportunity to file an amended complaint correcting the deficiencies by July 11, 2024. *Id.* The Court also warned Armour that failure to comply with the order may result in dismissal of the case. *Id.* at 6. Armour failed to timely file any amended complaint addressing the deficiencies, so the case was dismissed on July 17, 2024. *See* ECF 12. On August 8, 2024,

---

[3] *See* ECF 53 (Plaintiffs' opposition to ECFs 49 and 51); ECF 54 (American Financial's reply); ECF 66 (American Financial's opposition to ECF 58); ECF 67 (American Financial's opposition to ECF 56); ECF 68 (American Financial's opposition to ECF 57); ECF 74 (Bayview, Lakeview, and LoanCare's opposition to ECF 58); ECF 75 (Bayview, Lakeview, and LoanCare's opposition to ECF 57); ECF 78 (Bayview, Lakeview, and LoanCare's opposition to ECF 77); ECF 79 (American Financial's opposition to ECF 77); ECF 80 (Plaintiffs' reply regarding ECF 58); ECF 81 (Plaintiffs' reply regarding ECF 77); ECF 83 (Bayview, Lakeview, and LoanCare's opposition to ECF 82); ECF 84 (American Financial's opposition to ECF 82).

[4] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

[5] Elias is referred to as "Rebecca Armour" in several of Plaintiffs' filings. *See e.g.*, ECF 56, at 2; ECF 56-1, at 1; ECF 80, at 3; ECF 81, at 1.

Armour filed a "motion to reopen case," ECF 13, which was granted, ECF 14. Plaintiffs then filed an amended complaint on December 18, 2024. ECF 15.

In the amended complaint, Plaintiffs allege that Elias is "the owner of the property located at 9228 Broken Timber Way Columbia Maryland 21045" (the "Property"). ECF 15, at 2. Armour is Elias' spouse. *Id.* Plaintiffs allege that in "2018 & 2021," "Plaintiff entered into a Deed of Trust agreement . . . which secures a promissory note." *Id.* at 3. According to Plaintiffs, the "promissory note and related obligations have been securitized" and "Defendants have failed to produce the original promissory note upon request." *Id.* Plaintiffs also allegedly "issued a valid recission notice" pursuant to the Truth in Lending Act ("TILA"), "which was ignored by Defendants," and "submitted a Qualified Written Request" pursuant to the Real Estate Settlement Procedures Act ("RESPA"), to which "Defendants failed to respond adequately." *Id.* Plaintiffs allege that a foreclosure sale of the Property was "scheduled for January 10, 2024."[6] *Id.* at 4.

Plaintiffs bring claims for breach of contract (Count I); breach of trust (Count II); violation of RESPA, 12 U.S.C. § 2605 (Count III); violation of TILA, 15 U.S.C. § 1635 (Count IV); "violation of constitutional rights" (Count V); "defects in the chain of title" (Count VI);

---

[6] The Court notes that the original complaint in this action was filed on February 20, 2024, *after* the foreclosure sale was allegedly scheduled to take place. American Financial notes that a search of Howard County land records revealed a "'quitclaim deed' wherein [] Armour appears to attempt to, for $10.00 consideration, transfer the property to grantee 'GODS PLAN TRUST,' and establish as a trustee of the Property 'SWEET AND SAVORY LLC.'" ECF 54, at 3. The website of the Maryland State Department of Assessments and Taxation ("SDAT") reflects that the Property was sold on March 28, 2024 by Elias to "Gods Plan Trust" and "Sweet and Savory LLC" for $10. *White v. Lexington Ct. Apartments, LLC*, Civ. No. DKC-16-0427, 2016 WL 1558340, at *3 n.4 (D. Md. Apr. 18, 2016) ("The court may take judicial notice of information found on SDAT's website.").

"securitization issues" (Count VII); and "bifurcation of debt" (Count VIII).[7]   *Id.* at 4–8 (capitalization altered).  Though not listed as a numbered count, Plaintiffs also seemingly attempt to raise a claim sounding in mortgage fraud.  *See id.* at 6.  Plaintiffs request relief in the form of an injunction preventing "Defendants from proceeding with the foreclosure sale scheduled for January 10, 2024," a declaration "that Defendants lack standing to enforce the debt," an order requiring "Defendants to provide the original promissory note or otherwise establish standing," damages in the amount of $9.5 million, and that the Court "grant [Plaintiffs'] claim for recoupment."  *Id.* at 8.

Shortly after Defendants were served, Plaintiffs filed a motion to compel discovery responses, ECF 20, which was denied as premature, ECF 21.  On March 21, 2025, Bayview, Lakeview, and LoanCare filed a notice that Elias had initiated Chapter 13 bankruptcy proceedings in the United States Bankruptcy Court for the District of Maryland and requested that this case be referred to the Bankruptcy Court, ECF 29, at 1–2, which Plaintiffs opposed, ECF 31.  Shortly after filing their opposition, Plaintiffs filed a motion for default judgment against American Financial, ECF 32, which was denied, ECF 38.

Between February and April of 2025, the Court granted Defendants several extensions to file their respective responses to the amended complaint.  *See* ECF 26 (order granting extension to Bayview, Lakeview, and LoanCare); ECF 38 (granting two motions for extension of time filed by Bayview, Lakeview, and LoanCare and an extension to American Financial).  In late April of 2025, Plaintiffs submitted a flurry of filings including an emergency motion for a temporary restraining order and preliminary injunction, ECF 39; a request for entry of default, ECF 40; a "Judicial Notice

---

[7] In the amended complaint, Counts I through V are labeled with Roman numerals, and Counts 6 through 8 are labeled with Arabic numerals.  *See* ECF 15, at 4–7.  For consistency, the Court uses Roman numerals in referencing the numbered claims.

and Objection to the continued granting of extensions," ECF 41; a "motion to compel FARA registration, anti-bribery statements, and challenge to attorney testimony as hearsay," ECF 42; an "AFFIDAVIT TRUTH" and other exhibits, ECF 43; a motion for a "subpoena to produce documents, information, or objects," ECF 44; and another opposition to transferring this case to the Bankruptcy Court, *see* ECF 45. The Court declined to refer the case to the Bankruptcy Court and otherwise denied Plaintiffs' motions but ordered Defendants to file their responses to the amended complaint. ECF 48.

On May 30, 2025, American Financial filed its motion to dismiss. ECF 49. Shortly thereafter, on June 2, 2025, Bayview, Lakeview, and LoanCare filed their motion to dismiss. ECF 51. Plaintiffs opposed the motions, ECF 53, and American Financial filed a reply, ECF 54. On August 5, 2025, Plaintiffs again submitted a number of filings, including a motion for leave to file a surreply, ECF 56; a motion for summary judgment, ECF 57; a motion for entry of default judgment, ECF 58; a "notice to move the court in equity for lack of rebuttal," ECF 59; a "judicial demand for action based on record silence," ECF 60; a "request for sua sponte ruling based on unrebutted affidavits," ECF 61; and a "notice of constructive default," ECF 62. Also, in August of 2025, Plaintiffs filed a motion for expedited discovery. ECF 77. On December 1, 2025, Plaintiffs filed another motion for default judgment. ECF 82. All pending motions are now ripe for resolution.

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a complaint for a lack of subject matter jurisdiction. "Rule 12(b)(1) governs motions to dismiss for mootness and for lack of standing, which pertain to subject matter jurisdiction." *Stone v. Trump*, 400 F. Supp. 3d 317, 333 (D. Md. 2019); *see also Pruitt v. Resurgent Cap. Servs., LP*, 610 F. Supp. 3d 775, 779

(D. Md. 2022) (explaining that motions to dismiss for lack of standing are considered under Rule 12(b)(1)). "Motions to dismiss for lack of subject matter jurisdiction are properly granted where a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F.Supp. 676, 679 (D. Md. 1996)).

In deciding whether a complaint alleges facts sufficient to support subject matter jurisdiction, the Court assumes the truthfulness of the facts alleged. *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). And the Court liberally construes pleadings by pro se plaintiffs. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That said, "a pro se plaintiff must still prove that subject-matter jurisdiction exists." *Adams v. Royal Park Nursing & Rehab.*, No. 20-cv-634, 2021 WL 4462914, at *3 (W.D.N.C. Sept. 29, 2021).

## B.     Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson*, 551 U.S. at 94; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time,

a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

In reviewing a motion brought under Rule 12(b)(6), the Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted).

Because Plaintiffs bring this suit pro se, the Court must liberally construe their pleadings, holding them to a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). This leniency has its limits, though. "A court may not construct the plaintiff's legal arguments for him, nor is a district court required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Runge v. Barton*, No. CIVA 6:08-0231-GRA, 2009 WL 3245471, at *1 (D.S.C. Oct. 2, 2009) (first citing *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993); and then quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985)), *aff'd*, 368 F. App'x 361 (4th Cir. 2010).

## III.    ANALYSIS

### A.    Defendants' Motions to Dismiss

Defendants move to dismiss Plaintiffs' amended complaint with prejudice on the grounds that 1) Armour lacks standing to bring any claims, and 2) the amended complaint fails to state a claim under Rule 12(b)(6). ECF 49-1, at 4–8; ECF 51-2, at 3–4. Defendants' arguments overlap substantially across both motions, so the Court will consider them together.

1. <u>Armour lacks standing to bring the claims in the amended complaint.</u>

Defendants assert that Armour lacks standing to bring any claims in the amended complaint because he is not a borrower on the loan at issue. ECF 49-1, at 8; ECF 51-2, at 12. Armour responds that he is "the rightful owner of the property" and "holds a valid and recorded Warranty Deed evidencing ownership in the subject property."[8] ECF 53, at 1–2.

Whether a plaintiff has standing to sue is a threshold inquiry for any lawsuit. *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 597 (2007). "As the party seeking to invoke federal jurisdiction, Plaintiffs bear the burden of establishing standing." *In re Gerber Prod. Co. Heavy Metals Baby Food Litig.*, Civ. No. 121-269(MSN)(JFA), 2022 WL 10197651, at *4 (E.D. Va. Oct. 17, 2022) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish standing, a plaintiff must demonstrate that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of

---

[8] A copy of the special warranty deed on the Property was submitted by Bayview, Lakeview, and LoanCare as an exhibit attached to their motion to dismiss. *See* ECF 51-3. This copy of the special warranty deed is dated September 25, 2018, shows Elias as grantee and "sole owner" of the Property, and includes markings that reflect the deed was recorded in Howard County on April 19, 2019. ECF 51-3, at 1. It is also signed by the grantor, Donald Loren, as attorney in fact, and was notarized on September 25, 2018 by Kris E. Goodwin. *Id.* at 2. To the left of Loren's signature is a blank line. *Id.* In support of Armour's assertion that he "holds a valid and recorded Warranty Deed evidencing ownership in the subject property," ECF 53, at 1–2, Armour submits another copy of a special warranty deed, which he has marked as the "counter deed." *See* ECF 53-3. The "counter deed" is also dated September 25, 2018, shows Elias as the grantee and sole owner of the Property, but lacks the markings reflecting recordation of the deed on the first page. *Id.* at 1. It is also signed by Loren and notarized as of September 25, 2018, but the blank line to the left of Loren's signature is signed by Elias *and* Armour. *Id.* at 2. The bottom of the second page is notarized by Warren Scott Slack and dated June 4, 2025, two days before Plaintiffs submitted their opposition to the motions to dismiss with the "counter deed" attached thereto. *Id.* American Financial addresses the "counter deed" in its reply and indicates that it searched the Howard County land records and "there appears to be no legal recorded document that indicated [ ] Armour has any claim to either ownership of the Property or obligation under its mortgages." ECF 54, at 3. The Court need not rely on either document in addressing the pending motions but notes that the "counter deed" appears to have been altered by Plaintiffs in 2025 and, as such, its authenticity is highly suspect.

the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. The plaintiff's "injury in fact" must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

The claims in the amended complaint arise solely out of the mortgage on the Property, and Armour plainly asserts that "both Plaintiffs are jointly obligated and directly affected by the mortgage and the foreclosure proceedings." *See* ECF 15, at 3. However, Plaintiffs fail to allege facts sufficient to establish that Armour has Article III standing because they do not allege that Armour was a borrower or is in any way obligated by the mortgage for the Property.

To have standing to bring a claim under the relevant provisions of RESPA and TILA, a litigant must be a borrower on the loan at issue. *See Robinson v. Nationstar Mortg. LLC*, Civ. No. TDC-14-3667, 2019 WL 4261696, at *6 (D. Md. Sept. 9, 2019) (spouse of borrower was "not 'obligated' to pay the amount due on the Note and therefore [wa]s not a 'borrower' for purposes of RESPA" and could not bring a claim); *Gogna v. PHH Mortg. Corp.*, Civ. No. DKC-24-2346, 2025 WL 2494346, at *5 (D. Md. Aug. 29, 2025) ("TILA confers a statutory 'right of action only on a borrower in a suit against a borrower's creditor.'" (quoting *Hawkins v. Chick*, Civ. No. DKC-09-0661, 2009 WL 4017953, at *8 (D. Md. Nov. 17, 2009))). Similarly, "only parties and third-party beneficiaries of [a] contract may sue to enforce [a] contract's terms." *Staton v. Fed. Nat'l Mortg. Ass'n*, Civ. No. MAB-14-02155, 2015 WL 13611834, at *3 (D. Md. Jan. 9, 2015) (citing *120 W. Fayette St., LLLP v. Mayor of Baltimore*, 43 A.3d 355, 368 (Md. 2012)). "An individual is a third-party beneficiary to a contract if the contract was intended for his benefit and it . . . clearly appear[s] that the parties intended to recognize him as the primary party in interest and as privy to

the promise." *Id.* (citation modified) (quoting *120 W. Fayette St.*, 43 A.3d at 368).  Further, "[i]t is not enough that the contract merely operates to an individual's benefit: 'An incidental beneficiary acquires by virtue of the promise no right against the promisor or the promisee.'" *Id.* (quoting *120 W. Fayette St.*, 43 A.3d at 368).

Despite the assertion in Plaintiffs' opposition that Armour is a "rightful owner of the property," Plaintiffs allege in the amended complaint that Armour is not a borrower on the loan, that Elias is "the owner of the property," and that Armour's alleged obligation arises from his role as Elias' spouse.  *See* ECF 15, at 2 ("Elias is the owner of the property . . . Armour[] is the spouse to Rebecca Elias and is 'jointly obligated[']"); *see also* ECF 15-1, at 2 ("Affidavit of notice to rescind security interest" attached to the complaint affirming that Elias is "the [a]lleged borrower on the loan secured by the property").  Armour also does not allege that he was a party or third-party beneficiary to the deed of trust at the heart of his claims so as to allow him to enforce any terms of the deed.  And as Defendants point out, even "spouses of borrowers . . . who are not personally obligated on a note, cannot enforce any terms of the loan."  ECF 51-2, at 12; *see also Nyhart v. PNC Bank, N.A.*, Civ. No. PX-15-2241, 2016 WL 6996744, at *3 (D. Md. Nov. 30, 2016) (finding that the spouse of a borrower did not have standing to enforce the terms of a loan because she was "not an actual borrower on the loan").

Moreover, Armour fails to allege an injury-in-fact.  As best the Court can tell, the only alleged injury flowing from Plaintiffs' claims is a pending foreclosure on the property, ECF 15, at 4, and Plaintiffs fail to plead that Armour has suffered any injury based on the pending foreclosure since Elias is the sole owner of the Property.  Armour does claim that he is "jointly obligated" on the mortgage, but this conclusory assertion fails to plausibly show Amour suffered an injury-in-fact to support his standing to bring the claims alleged.  *Cf. Staton*, 2015 WL 13611834, at *4

("Without an enforceable contract right in the assignment of the Note or Deed of Trust, Plaintiff cannot base his claims on allegations that assignments of these interests were illegal.").

Armour also cannot establish standing for Counts V through VIII of the amended complaint alleging violation of constitutional rights, defects in the chain of title, securitization issues, and bifurcation of debt, and indeed neither can Elias, because those claims cannot be redressed by this Court. *See Wells v. Johnson*, 150 F.4th 289, 299 (4th Cir. 2025) (noting that a plaintiff must show, as an element of Article III standing, "that the remedy will do something to help him—'that he personally would benefit in a tangible way from the court's intervention'" (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975))).  First, the alleged violation of Plaintiffs' Fourth and Fourteenth Amendment rights, as pled, ECF 15, at 5, cannot be redressed by a judicial decision because that claim is not cognizable against private companies, as Defendants are here.  *United States v. Morrison*, 529 U.S. 598, 621 (2000) (noting "the time-honored principle that the Fourteenth Amendment, by its very terms, prohibits only state action"); *Webster Cnty. Lumber Co. v. Wayne*, 61 F. App'x 63, 66 (4th Cir. 2003) ("[I]t has been well-established for over a century that the Fourteenth Amendment restrains or controls only state actors, not private actors.").

Second, Plaintiff's claims alleging that foreclosure of the Property is invalid due to "defects in the chain of title," "securitization issues," and "bifurcation of debt," likewise cannot be redressed by this Court.  *See* ECF 15, at 6–7.  In connection with those claims, Plaintiffs request an injunction preventing Defendants from foreclosing on the Property and a declaration that "Defendants lack standing to enforce the debt."  *See id.* at 8.  Under the Anti-Injunction Act, federal courts "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  "Significantly, where the Anti-Injunction Act bars

an injunction it also bars the issuance of a declaratory judgment that would have the same effect as an injunction." *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 641 (D. Md. 2015) (internal quotation marks omitted) (quoting *Lovett v. Deutsche Bank Nat'l Trust Co.*, Civ. No. 12-1816-MBS-SVH, 2013 WL 841679, at *6 (D.S.C. Feb. 12, 2013)). The Anti-Injunction Act prevents the Court from issuing both the requested injunctive and declaratory relief because such relief would actually or effectively enjoin ongoing foreclosure proceeding in state court. *See id.* (denying request for declaratory and injunctive relief that would disrupt state foreclosure proceedings based on the Anti-Injunction Act and collecting cases that concluded the same).

Accordingly, all of Armour's claims against Defendants, as well as Elias' claims under Counts V through VIII must be dismissed under Rule 12(b)(1) for lack of standing.

### 2. The remaining claims in the amended complaint fail under Rule 12(b)(6).

The Court now turns to the remaining claims brought by Elias. Defendants move for dismissal under Rule 12(b)(6), arguing that the amended complaint "is devoid of any mention of what role or action each Defendant allegedly took to give rise to its individual liability in this suit." ECF 49-1, at 4–5; *see also* ECF 51-2, at 15. Plaintiffs counter that "[e]ach claim is brought against the appropriate defendant as identified in the caption and factual narrative" and that "[a]llegations of fraud, misrepresentation, and breach of contract are supported by factual references including dates, actions taken, and documentation transmitted to and received from [American Financial]." ECF 53, at 2. The Court observes that throughout the complaint, Plaintiffs do not identify which Defendant carried out certain alleged acts, and instead generally reference the conduct of "Defendants." *See* ECF 15, at 3–8. And while Plaintiffs identify each Defendant as parties to the complaint, *see id.* at 2, the Court agrees with Defendants that the rest of the amended complaint "fails to give the Defendants adequate notice of the claims made against them." ECF 49-1, at 5.

"[D]etermining whether a complaint states a plausible claim for relief is a 'context-specific task.'" *Langford v. Joyner*, 62 F.4th 122, 126 (4th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 679). "It is not a categorical rule that a complaint that makes allegations collectively against Defendants will never survive a motion to dismiss." *Heym v. APG Hous., LLC*, Civ. No. JRR-23-2092, 2024 WL 2302306, at *3 (D. Md. May 21, 2024) (internal quotation marks omitted) (quoting *Langford*, 62 F.4th at 126). But where a plaintiff employs a "'global manner of pleading,'" he must still allege "'sufficient facts to allow the court to infer liability as to *each* defendant.'" *Langford*, 62 F.4th at 126 (first citing *Barrett v. Bd. of Educ. of Johnston Cnty.*, 590 F. App'x 208, 211 (4th Cir. 2014) (per curiam); and then citing *Iqbal*, 556 U.S. at 676 (emphasis in original)). "A pleading cannot simply 'lump[ ] [Defendants] together in the complaint without sufficient detail,' or further without 'alleging any facts specific to each entity.'" *Heym*, 2024 WL 2302306, at *3 (quoting *Wormack v. Caesars Baltimore Mgmt. Co., LLC*, Civ. No. SAG-22-01108, 2022 WL 2668183, at *5 (D. Md. July 11, 2022)). "'[A]t this early stage in the litigation, a plaintiff will not come to court fully armed with the requisite facts to prove their case,' but the plaintiff still must allege 'sufficient facts to allow the court to infer liability as to *each* defendant.'" *Id.* (quoting *Langford*, 62 F.4th at 126) (emphasis in *Langford*). Elias fails to do so here.

As noted, Elias' claims arise out of a pending foreclosure on the Property that she owns. ECF 15, at 2. But Elias does not specify the role of any Defendant in Elias' mortgage loan or Defendants' alleged involvement in the events leading up to the foreclosure of the Property. Instead, Elias impermissibly "lumps [Defendants] together in the complaint without sufficient detail or further without alleging any facts specific to each entity." *Heym*, 2024 WL 2302306, at *3 (citation modified). Elias fails to identify individual conduct by any Defendant and only alleges that "Defendants" collectively "failed to produce the original promissory note," "ignored" a "valid

recission notice," "failed to respond" to a "QWR," and failed to "demonstrat[e] proper standing" to foreclose on the Property. *Id.* at 3–4. Even under the most generous reading afforded to a pro se litigant, the amended complaint is devoid of any alleged conduct for which any individual Defendant could be held liable. Moreover, Elias' lack of specificity in the amended complaint "places an unjustifiable burden on defendants to determine the nature of the claim against them and to speculate on what their defenses might be." *Wynn-Bey v. Talley*, Civ. No. RWT-12-3121, 2012 WL 5986967, at *2 (D. Md. Nov. 28, 2012) (citing *Holsey v. Collins*, 90 F.R.D. 122 (D. Md. 1981)). Accordingly, Elias fails to allege "sufficient facts to allow the court to infer liability as to *each* defendant," *Langford*, 62 F.4th at 126, and dismissal is warranted on this basis. *Cf. Wright v. Nationstar Mortgage, LLC, et al.*, Civ. No. PJM-14-3991, 2016 WL 1077164, at *5 n.12 (D. Md. Mar. 18, 2016) (dismissing claims related to a property foreclosure against a defendant bank where the plaintiff "fail[ed] to describe how BANA has had *any* connection to the Loan or the actions taken with regard to the Loan" (emphasis in original)), *aff'd sub nom. Wright v. Nationstar Mortg., LLC*, 674 F. App'x 325 (4th Cir. 2017). Dismissal is also appropriate because Elias fails to plead sufficient facts to support each of her claims, as discussed below.

### i. Breach of Contract (Count I) and Breach of Trust (Count II)

The first count of the amended complaint is a breach of contract claim, alleging that "Plaintiff entered into a Deed of Trust agreement in 2018 & 2021" and that a breach of contract occurred when Defendants "fail[ed] to respect the terms of the Deed of Trust, including failing to provide documentation proving their authority to enforce the debt." ECF 15, at 3–4. Specifically, Elias seems to take issue with Defendants' failure "to produce the original promissory note upon request." *Id.* at 3. In Maryland, "to prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001). Here, the amended

complaint contains no factual content alleging any specific contractual obligations between Elias and Defendants.  As noted, Elias does not identify which Defendant was allegedly a party to the deed of trust forming the basis for her breach of contract claim.  Elias also fails to plead the terms of any contract that purportedly gives rise to the obligation to "provide documentation proving their authority to enforce the debt" or "produce the original promissory note."  ECF 15, at 3–4.

While Elias did not include the "Deed of Trust agreement[s]" from 2018 and 2021 with the amended complaint,  Bayview, Lakeview, and LoanCare have attached a copy of a deed of trust for the Property from June 25, 2021 to their motion, *see* ECF 51-5, which Plaintiffs explicitly reference in their amended complaint and do not contest the authenticity of.[9]  *See* ECF 15, at 2; ECF 53, at 1 (challenging the special warranty deed from 2018 but not the deed of trust from 2021); *see also D.C. Water & Sewer Auth. v. Samaha Assocs., PC*, 729 F. Supp. 3d 511, 517 (D. Md. 2024) ("Generally, a contract is integral in a breach of contract dispute.") (collecting cases).  However, as noted, Elias does not identify any terms of the deed of trust that give rise to the alleged obligations forming the basis for her breach of contract claim.  Neither can the Court locate a provision in the deed that gives rise to the purported obligations.  Elias instead provides nothing more than conclusory assertions that a breach of contract occurred, and more than "naked assertions devoid of further factual enhancement" are required to state a claim.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  The amended complaint thus fails to adequately plead a breach of contract claim.

The same deficiency exists in Elias' breach of trust claim.  "To state a claim for breach of trust, a beneficiary must plead facts showing 'the existence of a trust duty, the failure of the trustee

---

[9] Accordingly, the Court considers the June 25, 2021 deed of trust here.  *Higgins v. McDonald*, Civ. No. RDB-25-1695, 2026 WL 111330, at *7 (D. Md. Jan. 15, 2026).

to perform it and that consequently the court should grant the requested remedy.'" *Potts v. Potts*, Civ. No. WDQ-13-1986, 2014 WL 4060031, at *9 (D. Md. Aug. 13, 2014) (quoting *Madden v. Mercantile–Safe Deposit & Trust Co.*, 339 A.2d 340, 350 (Md. App. 1975)). Here, Elias alleges that Defendants are "trustees and fiduciaries under the Deed of Trust" and breached a "duty of loyalty and good faith . . . by securitizing the note and failing to maintain the original terms of the agreement." ECF 15, at 4. Elias, however, fails to identify the existence of a trust or of any trust duty, of which any Defendant is allegedly a "trustee and fiduciar[y]." *Id.* Nor does she specify the "original terms of the agreement" that any Defendant allegedly failed to maintain. *Id.* Accordingly, Elias fails to plausibly allege a breach of trust claim.

## ii.    RESPA (Count III)

Elias also alleges a violation of RESPA by Defendants' failure to "provide a timely and adequate response to Plaintiffs' Qualified Written Request," or QWR. ECF 15, at 4. "To state a claim under RESPA's QWR provisions, a plaintiff must allege: '(1) a written request that meets RESPA's definition of a QWR, (2) the servicer failed to perform its duties, and (3) actual damages.'" *Gillis v. Household Fin. Corp. III*, Civ. No. GJH-18-3923, 2019 WL 3412621, at *10 (D. Md. July 29, 2019) (quoting *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 417 (D. Md. 2018)). A QWR is defined under the applicable statute as written correspondence that "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). The statute imposes upon a mortgage servicer a duty to respond to a QWR under RESPA "within 5 days (excluding legal public holidays, Saturdays, and Sundays)" after receiving a QWR "for information relating to the servicing of [a federally related mortgage] loan." *Id.* (e)(1)(A). Here, while Plaintiffs allege they submitted a

QWR, the amended complaint does not provide sufficient detail for the Court to ascertain whether Elias, as the borrower, sent a valid QWR under RESPA.  Moreover, Elias does not specify to which Defendant she submitted the QWR nor when any purported QWR was sent in order to plausibly allege a failure to timely respond.  Finally, Elias fails to provide any information regarding any actual damages that flowed from Defendants' alleged failure to respond to any QWR. Accordingly, Elias' RESPA claim will be dismissed.

### iii.    TILA (Count IV)

Elias also fails to plausibly allege a violation of TILA based on the alleged submission of "a valid recission notice more than one year ago."  ECF 15, at 5.  In support of her TILA claim, Elias attaches a copy of the "affidavit of notice to rescind security interest," dated December 18, 2024, that Elias allegedly sent to American Financial, Lakeview, and LoanCare.[10]  *See* ECF 15-1 (capitalization altered).  The "TILA does create a limited rescission remedy."  *Sall v. Bounassissi*, Civ. No. DKC-10-2245, 2011 WL 2791254, at *5 (D. Md. July 13, 2011).  A borrower may either rescind "anytime within three days of the loan closing" or "if the lender fails to provide the borrower with certain required disclosures . . . the borrower may rescind the transaction anytime within three days of the time when the disclosures are finally made."  *Id.* (citing 15 U.S.C. § 1635(a)).  However, under the relevant statute, "recission does not apply to 'residential mortgage transaction[s].'"  *Brown v. Bank of Am., N.A.*, Civ. No. AW-10-1661, 2012 WL 380145, at *5 n.9 (D. Md. Feb. 3, 2012) (alteration in *Brown*) (quoting 15 U.S.C. § 1635(e)(1)).  Thus, "[Elias'] loan—that she obtained to purchase a residential property—is not subject to recission."  *Id.*  And even if the loan agreements at issue *were* subject to recission, any right to rescind extinguished before Elias sent her recission notice.  "A claim for rescission under TILA must be brought within

---

[10] The document is considered here because it is explicitly referenced in the amended complaint, and no party challenges its authenticity.  *Higgins*, 2026 WL 111330, at *7.

three years of the loan closing." *Pitts v. Mozilo*, Civ. No. GJH-15-451, 2015 WL 4770941, at *3 (D. Md. Aug. 11, 2015) (citing 15 U.S.C. § 1635(f)). The recission notice attached to the complaint appears to have been notarized on December 18, 2024, ECF 15, at 4, but purports to exercise a right to rescind on loans that allegedly closed on September 18, 2018 and June 25, 2021, *see id.* at 1. Any potential right to rescind "finally extinguished" within three years of loan closing, before Elias provided notice. Elias' TILA claim must be dismissed.

iv.   *Mortgage Fraud*

Finally, to the extent that Elias attempts to raise a claim of mortgage fraud, that claim fails as Elias fails to "state with particularity the circumstances constituting fraud" as required under Rule 9(b). Elias alleges that "Defendant(s) made material misrepresentations, including but not limited to: inflated appraisals, false interest rate disclosures, concealing or misrepresenting the terms of the mortgage or loan agreement, [and] falsifying income documentation or property value." ECF 15, at 5 (capitalization and punctuation altered). These vague allegations fail to identify the requisite information to state any fraud claim, including "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)). Accordingly, any mortgage fraud claim must be dismissed.

3.  <u>Dismissal is without prejudice.</u>

The Court has broad discretion to dismiss claims with or without prejudice. *Weigel v. Maryland*, 950 F. Supp. 2d 811, 826 (D. Md. 2013) (citing *180s, Inc. v. Gordini U.S.A., Inc.*, 602 F. Supp. 2d 635, 638–39 (D. Md. 2009)). When a plaintiff has not had the opportunity to amend a complaint, "the dismissal should generally be without prejudice." *King v. Rubenstein*, 825 F.3d 206, 225 (4th Cir. 2016). Moreover, dismissal with prejudice on the basis of a lack of subject

18

matter jurisdiction is strongly disfavored. *See Univ. of Pittsburgh v. Varian Med. Sys., Inc.*, 569 F.3d 1328, 1333 (Fed. Cir. 2009) ("[T]he law universally disfavors dismissing an action with prejudice based on lack of standing, and there is a strong presumption that such a dismissal is improper."); *Kimberly-Clark Worldwide Inc. v. First Quality Baby Prod. LLC*, Civ. No. 14-1466, 2017 WL 481434, at *2 (E.D. Wis. Jan. 17, 2017) ("Generally, a dismissal for lack of subject matter jurisdiction is without prejudice"). Elias was not originally named as a plaintiff in this action, *see* ECF 1, at 1, and thus the amended complaint is her first attempt at pleading her claims. Because Elias specifically has not had an opportunity to amend, her claims are dismissed without prejudice. The remainder of the claims are dismissed for lack of standing and therefore dismissal with prejudice is, as noted, disfavored. Accordingly, the amended complaint is dismissed without prejudice.

    4. <u>Leave to amend is denied.</u>

At the end of their opposition, Plaintiffs informally request leave to amend "if the Court determines any portion of the complaint to be deficient in form or specificity." ECF 53, at 3. "As an initial matter, such an informal request does not comport with the Federal Rules or the Local Rules of this Court." *Woodward v. GEICO Advantage Ins. Co.*, Civ. No. GLR-21-952, 2022 WL 2953053, at *16 (D. Md. July 25, 2022) (first citing Fed. R. Civ. P. 7(b); and then citing Loc. R. 103.6 (D. Md. 2021)). "A request for a court order must be made by motion," Fed. R. Civ. P. 7(b)(1), and in this district, "a motion requesting leave to file an amended pleading" must include "a clean copy of the amended pleading" and a redlined copy identifying the proposed amendments, Loc. R. 103.6(a), (c) (D. Md. 2025).

Where a request for leave to amend is made outside the bounds of a formal motion and without a proposed amended complaint, a court is likely to deny the request as procedurally improper. *See Hall v. JPMorgan Chase Bank, N.A.*, Civ. No. JKB-19-2510, 2020 WL 1452132,

at *8 (D. Md. Mar. 25, 2020) (denying leave to amend as procedurally improper where the pro se "[p]laintiff did not file a motion or submit a proposed amended complaint; he merely expressed his wish to amend in his opposition brief"); *see also Francis v. Giacomelli*, 588 F.3d 186, 197 (4th Cir. 2009) ("[P]laintiffs failed to provide the district court with a means by which to determine whether the amendment would cure the defects in the initial complaint. In the[se] circumstances, we conclude that the district court did not abuse its discretion in failing to give the plaintiffs a blank authorization to 'do over' their complaint.").  Further, as Defendants point out, Armour has already been afforded an opportunity to amend the complaint, with instructions, and Plaintiffs do not explain why the amended complaint fails to plead claims with adequate specificity as previously ordered.  *See* ECF 49-1, at 4; ECF 51-2, at 26.  Specifically, the Court pointed out that upon review of the original complaint, it could not "discern which claims [were] brought against which defendant or how each of the named defendants [were] involved in the allegedly unlawful conduct." ECF 11, at 4.  The Court explicitly instructed that the amended complaint must "name individual defendants and describe how each is involved in this matter, and list the precise relief sought."  *Id.* at 5.  In the amended complaint, however, Plaintiffs again fail to "describe how each [Defendant] is involved in this matter" as required by the Court's order.  *Cf. McCourry v. Town of Elkton*, Civ. No. WMN-12-1839, 2014 WL 3534040, at *4 (D. Md. July 14, 2014) ("Plaintiffs have been given opportunities to fully amend the complaint and submit sufficient facts, yet have failed to do so.").  Plaintiffs were also notified by the Court twice that any failure to comply with the Court's directive would result in the dismissal of the complaint.  ECF 11, at 5; ECF 14, at 1–

2. Nevertheless, as leave to amend was not properly sought and Plaintiffs did not provide any proposed amended complaint, the Court will deny leave to amend.[11]

### B.    Plaintiffs' Other Motions

Nearly two months after American Financial filed its reply brief, Plaintiffs filed a motion for leave to file a surreply. *See* ECF 56. Surreplies are generally disfavored under the Local Rules of this Court. *See* Loc. R. 105.2(a) (D. Md. 2025) ("Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed."); *see also Roach v. Navient Sols., Inc.*, 165 F. Supp. 3d 343, 351 (D. Md. 2015). Surreplies may only be permitted "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 Fed. App'x 960 (4th Cir. 2004).

Here, Plaintiffs assert they should be permitted to file a surreply because American Financial raises new arguments in its reply, such as "assertions regarding the conveyance of the property to a trust as grounds for dismissing the case," "mischaracterizations of the Plaintiffs' standing," "alleged implications of securitization, deed recordation, and compliance agreements," and "references to MERS status." ECF 56, at 1 (capitalization altered). However, the proposed surreply is not responsive to the argument in American Financial's reply brief, *i.e.*, that the documents submitted by Plaintiffs with their opposition "fail to assist in curing Plaintiffs' deficient

---

[11] Moreover, with respect to the request as made by Armour, "a district court may also deny leave to amend as futile where the proposed amended complaint fails for lack of standing." *Evans v. Am. Collection Enter.*, 624 F. Supp. 3d 593, 598 (D. Md. 2022) (citing *Laufer v. Naranda Hotels, LLC*, Civ. No. SAG-20-1974, 2020 WL 7384726, at *3 (D. Md. Dec. 16, 2020) ("Where a plaintiff lacks Article III standing, it is axiomatic that any proposed amendment that fails to remedy the standing issue is futile.")). Here, Plaintiffs do not provide the Court with a proposed amended complaint to evaluate, but the Court notes that any amended claims brought by Armour related to foreclosure of the Property would again fail for lack of standing. Further, given that the Property is now owned by someone other than Elias, *see supra* n. 6, it is unclear whether many of Plaintiffs' original claims remain viable, particularly those that seek to prevent foreclosure.

pleading," ECF 54, at 2, and it instead raises new arguments in support of Plaintiffs' claims. For example, Plaintiffs now advance a novel argument that "no actual loan occurred" in this case. ECF 56-1, at 2. Had Elias "wished to present this novel argument, she should have done so in her opposition brief, thereby giving Defendant[s] due notice and an opportunity to reply." *Roach*, 165 F. Supp. 3d at 351. Moreover, the proposed surreply does not alter the Court's conclusion that dismissal is warranted here, and as such, the Court will deny the motion. *See Doe v. Bd. of Educ. of Prince George's Cnty.*, 982 F. Supp. 2d 641, 664 (D. Md. 2013) (denying plaintiffs' motion for leave to file a surreply because "surreplies are disfavored in this District and the surreply would not alter the Court's analysis") (alteration omitted) (quoting *Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 679 (D. Md. 2013)), *aff'd*, 605 F. App'x 159 (4th Cir. 2015).

Because the amended complaint is being dismissed in its entirety, the rest of Plaintiffs' motions, including the motion for summary judgment (ECF 57), motion for expedited discovery (ECF 77), and motions for default (ECF 58 and ECF 82) will all be denied as moot.[12] *See, e.g.,*

---

[12] The Court would also be justified in denying the motions for default judgment and motion for expedited discovery as procedurally improper. First, Plaintiffs' approach fails to comport with the two-step process established by Fed. R. Civ. P. 55 which calls for the entry of default, followed by the entry of default judgment. *See Romero v. Barnett*, Civ. No. DKC-09-2371, 2011 WL 1938147, at *2 (D. Md. May 20, 2011) (citation omitted). Further, the clerk may only enter default against a party that has "failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Here, the motions for default were filed after Defendants defended against the action by filing their respective motions to dismiss and thus were improperly filed. *Compare* ECF 49 (American Financial's motion to dismiss filed on May 30, 2025) and ECF 51 (Bayview, Lakeview, and LoanCare's motion to dismiss filed on June 2, 2025), *with* ECF 58 (Plaintiffs' motion for entry of default judgment filed on August 5, 2025) and ECF 82 (Plaintiffs' motion for Clerk's entry of default judgment filed on December 1, 2025). Plus, as Plaintiffs are aware based on the previous denial of their motion to compel discovery responses, any motion pertaining to discovery is prematurely filed until a scheduling order has issued. *See* Loc. R. 803.1 (D. Md. 2025) ("[D]iscovery . . . shall not commence until the issuance of a Scheduling Order."); ECF 21, at 1 (denying motion to compel discovery responses as premature because "the Court will not enter a Scheduling Order until after . . . any motions filed pursuant to Fed. R. Civ. P 12 have been resolved, and the defendants have answered the complaint).

*Knickman v. Prince George's Cty.*, 187 F. Supp. 2d 559, 567 (D. Md. 2002) ("All of Plaintiff's claims have been dismissed, therefore, her motion for summary judgment is moot."); *Beatty v. BAC Home Loans Servicing, LP*, Civ. No. RDB-12-3188, 2013 WL 3868098, at *5 (D. Md. July 24, 2013) (denying as moot pending motion for default judgment when all claims were dismissed).

IV.    **CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss, ECF 49 and 51, are **GRANTED**, Plaintiffs' motions at ECF 56, 57, 58, 77, and 82 are **DENIED**, and this case is **DISMISSED**.

A separate implementing order will issue.


Dated: <u>February 20, 2026</u>                    <u>                /s/                </u>
                                                 Brendan A. Hurson
                                                 United States District Judge